**ASHLAND OIL & REFINING COMPANY,
Appellant,**

v.

**GENERAL TELEPHONE COMPANY of
Kentucky et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 13, 1970.

W. H. Dysard, Dysard, Johnson & Welch, Ashland, for appellant.

Robert T. Caldwell, Caldwell & Hughes, Ashland, for appellees.

VANCE, Commissioner.

On this appeal we consider the right of a party which has settled a tort claim to recover by indemnity from the employer of the claimant the amount of the settlement and also the right of the employer's insurance carrier to recoup the amount of workmen's compensation benefits paid by it from the party which had paid the settlement money.

The Ashland Oil and Refining Company maintained an electrical power line inside its plant in Ashland, Kentucky. It granted to General Telephone Company permission to use its electric power poles for stringing telephone lines into the Ashland plant. For the purpose of brevity, Ashland Oil and Refining Company will be referred to hereinafter as "Ashland" and General Telephone Company as "General."

Ashland and General entered into a written contract by which General agreed to maintain, repair, renew, and where necessary, modify the telephone equipment to the end that efficient service would be accorded to Ashland.

The telephone lines were strung approximately six feet below the power lines and approximately four feet below disconnect levers which when open extended to within eighteen inches of the telephone lines. The disconnect levers carried a charge of approximately 6,000 volts.

A defect developed in the telephone lines and Ashland called upon General to make repairs. Two of General's employees made a service call and attempted to locate the trouble. In doing so, one of them climbed a power pole to inspect the telephone lines.

Ashland's superintendent for electric power observed General's employees making their inspection of the telephone lines and observed that they were working without proper safety equipment. Ashland's superintendent warned General's employees of the danger involved and also warned General's manager about the danger involved.

General's employees were unable to make the repairs on the first trip. On the following day one of the employees returned, still without proper safety equipment, to make the repairs. He was seriously injured as a result of contact with either the power lines or the disconnect levers.

Ashland had failed to close the disconnect levers which would have placed them two feet farther from the telephone lines. General did not furnish any safety equipment to its employee after having been warned of the dangerous condition and permitted him to work with a warning for him "to be careful." The employee was cognizant of the danger involved and did not insist upon the safety equipment.

As a result of his injury the employee was paid workmen's compensation benefits by General's compensation carrier. The employee also filed action directly against Ashland. The compensation carrier intervened as a third-party plaintiff to recover from Ashland the amount of compensation paid and Ashland filed a third-party claim against General seeking indemnity for any

amount that might be adjudged against Ashland.

With these claims pending, Ashland settled the claim of the injured employee for $14,500 and agreed with him that if the compensation carrier was entitled to recoup the compensation benefits paid that Ashland and not the employee would be liable therefor. General did not participate in any of the negotiations for the settlement nor assent to it in any way. Ashland's claim for indemnity against General for the sum paid in the settlement and the claim of General's compensation carrier against Ashland for recovery of compensation benefits paid by it were submitted to the court for trial without a jury upon proof taken by deposition.

The trial court found that Ashland had a duty to do more than give a warning of the dangerous condition and that it should have taken active steps to prevent the injury to the employee. For this failure Ashland was found to be negligent. General was found to be negligent for its failure to provide its employee proper safety equipment and the employee was also found to be negligent in not exercising ordinary care for his own safety. The correctness of these findings is not contested on this appeal.

The lower court dismissed both Ashland's claim for indemnity and the claim of the compensation carrier to recover compensation payments made, but adjudged a recovery to Ashland in the amount of $567.00 on the theory that by settlement of the action, Ashland paid that much of the workmen's compensation liability of General.

■ At the outset we are confronted with the argument that Ashland's claim cannot be maintained against General because General's liability is limited by reason of KRS 342.015(1) to the amount of its compensation payments, said payments being exclusive of all other liability. This contention was decided adversely to General in Kentucky Utilities Co. v. Jackson County R. E. Coop. Corp., Ky., 438 S.W.2d 788 (1969) and Louisville Gas & Electric Company v. Koenig, Ky., 438 S.W.2d 791 (1968).

■ Ashland's right to indemnity, however, was complicated by the ultimate finding of the trial court that the injured employee was negligent in failing to use ordinary care for his own safety. It follows that the claim of the injured employee against Ashland would have been dismissed if Ashland had gone to trial on that issue. Except for the settlement, not assented to or participated in by General, Ashland would not have been out anything and would have had no reason to seek indemnity. In Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W.2d 16 (1932) wherein a settlement was made by one tort-feasor who then sought contribution from an alleged joint tort-feasor we said:

"* * * The act of payment of compensation in the satisfaction of judgment or compromise to the injured passengers by the Consolidated Coach Corporation, if their injuries were the direct and proximate result of the joint and concurrent negligence of the drivers of the bus and the truck, fixed and determined its right of action against Burge. However, not being a party to the compromise settlements of the Consolidated Coach Corporation with the passengers, he is not bound thereby. But if the amounts were in good faith paid in pursuance to compromises, made honestly and in good faith, they are prima facie correct, with the legal right in Burge to offer evidence tending to show the nonexistence of any fact essential or necessary to establish he was not liable at the time to the injured passengers, or that the compensation that was paid by the Consolidated Coach Corporation to either or all of them, was not paid in good faith, or not in accordance with a compromise, or was unreasonable or excessive.

"Its compromises with the injured passengers do not deprive Burge of a trial by a jury, either as to his liability for the injuries to the passengers or as to the amount either one of them was en-

titled to recover. The burden is upon the Consolidated Coach Corporation to establish the negligence of both drivers of the truck and bus, as the concurring causes of the injuries to the passengers, and Burge has the right, unaffected by the compromise settlements of their claims, to rebut the evidence tending to show his driver's negligence, as well as to show that, if his driver was negligent in the operation of his truck, such was not the proximate cause of their injury, either solely, or combined and concurring with the negligence of the driver of the bus." (Citing cases)

Although *Consolidated Coach Corporation v. Burge* did not involve a question of contributory negligence of the original claimant, it lends support to the viewpoint that a settlement of a claim by one tort-feasor does not bind another who does not agree to it, nor does it in any way limit the defenses which the other party may assert to an action against him by the party who has made the settlement.

In Aetna Freight Lines, Inc. v. R. C. Tway Company, Ky., 352 S.W.2d 372 (1961) we held that it was not sufficient for one seeking indemnity upon the basis of a settlement made by it to show a reasonable possibility of its having been held liable to the original claimant but that it was required to show actual legal liability. This case involved the application of the substantive law of Ohio.

In Tugboat Indian Co. v. A/S Ivarans Rederi, 334 Pa. 15, 5 A.2d 153 (1939) it was held that for a party who has voluntarily paid a claim to be entitled to indemnity from a party primarily liable, it must appear that the party paying the claim was himself legally liable and could have been compelled to pay the claim.

We find no Kentucky case directly in point but it appears sound to this court that one who has voluntarily paid a claim should be required to show that he was legally liable for it and could have been compelled at law to pay the claim before he is permitted a recovery by way of indemnity.

The ultimate establishment of the fact that Ashland had no legal liability to the injured employee is also dispositive of the claim of General's workmen's compensation carrier.

KRS 342.055 provides:

"Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employe may either claim compensation or proceed at law by civil action against such other person to recover damages, or proceed both against the employer for compensation and such other person to recover damages, but he shall not collect from both. If the injured employe elects to proceed at law by civil action against such other person to recover damages, he shall give due and timely notice to the employer of the filing of such action. If compensation is awarded under this chapter, either the employer or his insurance carrier, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employe from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the injured employe."

This statute gives to an injured employee the right of recovery against a person other than his employer *who has a legal liability therefor*. If the employer's compensation carrier has made payments of compensation, it may recover in its own name or that of the injured employee the amount of such payments from another person *in whom legal liability for damages exists*.

■ A prerequisite to the recovery of any compensation payments in this case is establishment of legal liability on the part of Ashland to pay damages to the injured employee.

The voluntary payment by Ashland to the injured employee in settling the claim was not necessarily an admission on the part of Ashland of a *legal liability* to pay damages. Whitney v. Louisville & N. R. Co., Ky., *296 Ky. 381, 177 S.W.2d 139* (1944). Many disputed claims are settled for a variety of reasons without any admission of actual liability.

■ Since the payment made by Ashland did not represent a recovery by the employee of a sum for which Ashland was legally liable, it follows that the compensation carrier was not entitled to recover the amount of the compensation payments it had made.

■ The judgment must be reversed to the extent that it allowed recovery by Ashland of the sum of $567.00 as restitution for twenty-one weeks of workmen's compensation benefits which the court found that General would have been required to pay if the settlement had not concluded the matter. The compensation payments to the injured employee were voluntary, no award having been made by the board. The right to compensation is purely statutory and courts have no authority with respect thereto until a claim has been presented for consideration and determination by the Workmen's Compensation Board and it has acted thereon.

The judgment insofar as it awards a recovery to Ashland in the sum of $567.00 is reversed. In all other respects, it is affirmed.

All concur except STEINFELD, J., not sitting.